1

2

3                          **UNITED STATES DISTRICT COURT**

4                             **DISTRICT OF NEVADA**

5

6   UNITED STATES,                          )

7              Plaintiff,                    )        Case No.  2:11-cr-00317-LDG-CWH
                                             )
8   vs.                                      )        **REPORT AND RECOMMENDATION**
                                             )        **AND ORDER**
9   AARON SALISBURY and ROSALIE             )
    DELGADO,                                 )
10                                           )
             Defendants.                     )
11  _____)

12          This matter was referred to the undersigned Magistrate Judge on Defendant Rosalie Delgado's

13  Motion to Suppress (#24), filed October 12, 2011; Defendant Aaron Salisbury's Motion for Joinder

14  (#25), filed Octoer 12, 2011; and the Government's Response to Defendant's Motion to Suppress for

15  Fourth Amendment Violation (#32), filed December 1, 2011.  The undersigned conducted an

16  evidentiary hearing on December 30, 2011.

17                                **BACKGROUND**

18          On August 30, 2011, an Indictment was returned against Defendants Aaron Salisbury and

19  Rosalie Delgado charging each with individual counts of: (1) conspiracy to distribute heroin in

20  violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(c); (2) possession with intent to distribute heroin

21  in violation of 21 U.S.C § 841(a)(1) and (b)(1)(c); and (3) possession of a firearm in furtherance of a

22  drug trafficking offense in violation of 18 U.S.C. § 924(c).  Defendant Salisbury is also charged with

23  unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and

24  924(a)(2).  The Indictment also includes a forfeiture allegation pursuant to 18 U.S.C. § 924(d)(1) and

25  28 U.S.C. § 2461(c).

26          On April 14, 2011, Las Vegas Metropolitan Police Department Officers Ocampo-Gomez,

27  Milewski, and Estrada were patrolling in a marked vehicle in an area of downtown Las Vegas known

28  for narcotics trafficking.  While patrolling, the officers noticed a man leaving room 114 of the Safari

    Motel and begin walking towards the street.  Immediately upon noticing the police vehicle, and in the

1   view of the officers, the man dropped a small package containing a white substance.  The officers

2   detained the individual and, after investigation, determined that the packaged substance was cocaine.

3   The man was arrested.

4          After the arrest, Officer Ocampo-Gomez testified that he began to walk toward the motel

5   room that the officers had seen the arrested individual exit.  As he did so, a woman opened the door

6   to the room from inside the room.  The woman was later identified as Alisha Berg, Defendant

7   Delgado's younger sister.  Officer Ocampo-Gomez was wearing his police uniform.  He testified that

8   he positioned himself in front of the door to the motel room and asked Ms. Berg if he could talk with

9   her.  He testified that Ms. Berg immediately stated that she needed to go back into the room to get her

10  cell phone, and backed into the room.  Officer Ocampo-Gomez testified that from the doorway, he

11  was able to see into the room.  He testified that from the doorway he noticed a man, later identified as

12  Co-Defendant Aaron Salisbury, standing behind a kitchenette island counter in the back of the room.

13  He estimated the distance from the doorway to where Salisbury was standing to be approximately 12-

14  15 feet.   Officer Ocampo-Gomez testified that he could see Defendant Salisbury holding a brightly

15  colored, uninflated balloon with both hands in front of him.  From the doorway Officer Ocampo-

16  Gomez yelled, "What are you doing?"  Officer Ocampo-Gomez testified that when Defendant

17  Salisbury noticed him standing at the door, Salisbury grabbed a small black box from the counter and

18  quickly moved out of sight behind a wall.  Having previously been in the residential units at the Safari

19  Motel, Officer Ocampo-Gomez was aware that the bathroom was located behind that wall.  In

20  addition to seeing Defendant Salisbury grab the box and move behind the wall, Officer Ocampo also

21  testified that he could see other brightly colored uninflated balloons on the counter where Defendant

22  Salisbury was standing.

23         Officer Ocampo-Gomez testified that, based upon his training and experience, balloons are

24  often used to package illegal narcotics for sale.  He also testified that when he saw Defendant

25  Salisbury move behind the wall with the box he was immediately concerned that evidence would be

26  flushed down the toilet and lost.  After Officer Ocampo-Gomez yelled toward Defendant Salisbury

27  and witnessed him grab a box and move behind the wall, Ms. Berg attempted to close the door.   At

28  that point, Officer Ocampo-Gomez placed his foot in the door and entered the room.  Upon entry, he

1  testified that he went immediately into the bathroom and discovered the black box on the floor of the
2  bathroom and saw a small tied-off balloon floating in the toilet.  Officer Ocampo-Gomez took
3  Defendants Delgado and Salisbury, as well as Ms. Berg, into custody and removed them from the
4  room.  After the individuals in the room were taken into custody, Officer Ocampo-Gomez was joined
5  by Officer Milewski for purposes of conducting a protective sweep of the room.  During the sweep,
6  the officers noticed a small digital scale, a snorting straw with residue, and small pieces of crumpled
7  tin foil.

8        In addition to Officer Ocampo-Gomez' testimony, Officer Milewski also testified during the
9  evidentiary hearing.  His testimony was consistent with Officer Ocampo-Gomez' as relates to the
10  detention and arrest of the man who the officers first witnessed come out of the motel room.  He also
11  testified that after the arrest, he witnessed Officer Ocampo-Gomez walk toward the motel room and
12  heard him yell.  After hearing Officer Ocampo-Gomez yell, Officer Milewski believed that he had
13  entered the room.  Shortly thereafter, Officer Milewski also entered the room to assist with the arrest
14  of the occupants and the protective sweep of the room.  Officer Milewski confirmed that other drug
15  paraphernalia which was reported in the search warrant application was located in the motel room.[1]

16        At the evidentiary hearing, the defense called Alisha Berg, Defendant Delgado's younger
17  sister, to testify.  During her testimony, Ms. Berg described Defendant Delgado as her "best friend."
18  She testified that she arrived at the motel room approximately 20 minutes before any interactions with
19  the police.  She indicated that she was waiting to meet her boyfriend and, when she initially opened
20  the door, she opened it to look for him.  She did not open the door in response to a command from the
21  police.  According to Ms. Berg, she opened the door just enough to allow her to look outside.  She
22  testified that she saw a police officer attempting to shine his flashlight light into the room through the
23  window.  Consequently, she yelled, "Cops!" She testified that she immediately attempted to shut the
24  door because she knew there were illegal drugs in the room.  She denied saying to Officer Ocampo-
25  Gomez that she needed to return to the room to obtain her cell phone.

26  ――――――――――――――――

27     [1]  A third officer, Officer Estrada, who was also on patrol, witnessed the arrest of the man who initially
exited the motel room and later heard "commotion" from within the room.  Because he was responsible to
28  maintain custody of the arrested man, Officer Estrada never entered the motel room.

1   After the officers entered the room and completed the protective sweep, Officer Milewski

2   contacted a Las Vegas Justice of the Peace and applied for a telephonic search warrant.  Although it

3   was not admitted into evidence the application and supporting affidavit is attached as Exhibit A to the

4   Government's response (#32) and the substance of the oral affidavit was set forth in Defendant's

5   motion (#24).  In applying for the search warrant, Officer Milewski provided the following sworn

6   statement:

> On 4/14/11, at approximately 2242 hours, I Officer D. Milewski, P#9678, Officer A Ocampo-Gomez, P#13653, while operating as marked patrol unit 9B1 (Inaudible) LVMPD summer uniform were in patrol at the Safari Motel, 2001 Fremont, Las Vegas, Nevada 89101, officers patrolled this property due to the fact that there's known for high narcotics traffic and numerous arrests have been made at this address for related offenses.  While driving through the property officers observed a male exit room #114, and began walking towards exit of the property, as officers drove by him, Officer Ocampo-Gomez and I observed him drop a small white rock from his left hand, through my training experience and the fact that is a high narcotic trafficking property, I believe the white rock was in fact crack cocaine, a pedestrian stop was conducted and the male was identified as [K.H.]. The white rock was recoverd and I immediately observed that it was wrapped in clear plastic, typical of how narcotics are sold in the street level narcotics transactions. [K.H.] was placed in custody for Possession of Controlled Substance (Cocaine).  As I was attempting to obtain [K.H.'s] pedigree information, Officer Ocampo-Gomez observed the door to room #114 opened, and a female later identified as Alisha Berg stepped out, Officer Ocampo-Gomez walked to the front door without entering the threshold of the doorway, Officer Ocampo-Gomez began asked to speak with Berg while processing (Inaudible) Officer Ocampo-Gomez stated I have to go back inside and get my cell phone.  Officer Ocampo-Gomez then observed the male later identified as Aaron Salisbury in the room, while standing in at the doorway.  Salisbury walked up and saw Officer Ocampo-Gomez standing at the door, and Salisbury quickly grabbed the black box that was on the counter and ran into the bathroom.  Officer Ocampo-Gomez also observed the bag of multi-color balloons on the counter where the black box was laying prior to Salisbury grabbing it and running into the bathroom.  Officer Ocampo-Gomez observed this without entering the threshold of the doorway, additionally through Officer Ocampo-Gomez training experience he knows that the multi-color balloons are commonly used as packaging materials for the sales of narcotics, specifically heroin.  Based on his training experience he believed that the reaction of the male seen grabbing the black box and running to the bathroom possibly indicated the male was attempting to conceal and or destroy the evidence of narcotics sales.  Officer Ocampo-Gomez entered the apartment with the intention to freeze the premises while conducting and protect the sweep of the motel room, officers observed in plain view an orange balloon that had been tied off and appeared to be filled with something floating in the toilet.  In addition there was a small digital scale and the black box Officer Ocampo-Gomez observed, the male grabbing and running in the bathroom with it on the floor next to the toilet.  The counter with the bag of multi-color balloons was located. Officers also observed the snorting straw with narcotics residue, a little push rod and small crumpled pieces of tin foil.  Officers then began the application process for a telephonic search warrant and subsequent investigation of narcotics sales and destruction of evidence.

4

1   *See* Ex. A attached to Govt's Response (#32).

2         By way of this motion, Defendants argue that the telephonic search warrant approved by a

3   Nevada state court judge was "defective under the Fourth Amendment" because it (1) contains a

4   deliberate falsehood; (2) deliberately omits material facts; and (3) was manufactured after evidence

5   was obtained during an illegal search.  Consequently, Defendants request that the Court suppress all

6   evidence obtained as a result of the search of the room.

7         **<u>DISCUSSION</u>**

8         The primary issue presented in this motion is whether the evidence seized or obtained

9   pursuant to the search warrant should be suppressed because there was a deliberate falsehood or an

10   intentionally reckless factual omission in the search warrant affidavit.  A defendant is entitled to an

11   evidentiary hearing on the validity of the affidavit underlying a search warrant if the defendant can

12   make a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false

13   statements or misleading omissions, and (2) the affidavit cannot support a finding of probable cause

14   without the allegedly false information.  *See United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir.

15   2000); *see also Franks v. Delaware*, 438 U.S. 154 (1978); *United States v. Stanert*, 762 F.2d 775 (9th

16   Cir. 1985) (holding that a defendant could challenge a facially valid affidavit by making a substantial

17   preliminary showing that the affiant intentionally or recklessly omitted facts required to prevent a

18   technically true statement in the affidavit from being misleading).  "To justify a hearing, a defendant

19   must make specific allegations, allege a deliberate falsehood or reckless disregard for the truth, and

20   accompany such a claim with a detailed offer of proof."  *United States v. Craighead*, 539 F.3d 1073,

21   1080 (9th Cir. 2008) (citation omitted).  Intentional or reckless omissions may also provide grounds

22   for a *Franks* hearing.  *United States v. Jawara*, 474 F.3d 565 (9th Cir. 2007).

23         If a defendant makes the requisite preliminary showing, a hearing is conducted to determine

24   the validity of the warrant.  *Franks v. Delaware*, 438 U.S. 154 (1978).  Suppression should result if,

25   after excising the false statements from the affidavit, there is no probable cause for the warrant.  *See*

26   *Franks*, at 171-172; *see also United States v. Kyllo*, 37 F.3d 526, 529-30 (9th Cir. 1994) (holding

27   *Franks* hearing was required when material facts were omitted that substantially undermined probable

28   cause of the search warrant, and *United States v. DeLeon*, 979 F. 2d 761, 764 (9th Cir. 1992)(holding a

deliberate or reckless omission by a government official who is not the affiant can be the basis for a *Franks* suppression). Generally, clear proof of a deliberate or reckless omission is not required as such proof is reserved for the evidentiary hearing. *United States v. May* , 2009 WL 1542557 *9 (D. Nev.) (citations omitted). "Deliberate intent to deceive or reckless disregard for the truth can be inferred from the omission of materials facts that would have negated probable cause." *Id.* Nevertheless, the "omission rule" does not require an affiant to provide information about every possible theory that would controvert the good faith assertion of probable cause. *Craighead*, 539 F.3d at 1081.

The issuance of a search warrant is reviewed deferentially and should be upheld if the issuing judge "had a 'substantial basis' for concluding [that] probable cause existed based on the totality of the circumstances." *Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009). Probable cause means a "fair probability" that contraband or evidence is located in a particular place. Whether there is a fair probability depends upon the totality of the circumstances, including reasonable inferences, and is a "commonsense, practical question." Neither certainty nor a preponderance of the evidence is required. *United States v. Kelley*, 482 F.3d 1047, 1050-51 (9th Cir.), citing *Illinois v. Gates*, 462 U.S. 213, 246 (1983).

**A. Application for Telephonic Search Warrant by Officer Milewski**

Although not briefed, during the evidentiary hearing Officer Milewski was questioned as to why he applied for the search warrant and not Officer Ocampo-Gomez. It is clear from both the affidavit and the testimony adduced at hearing that Officer Ocampo-Gomez was the eyewitness source of most of the information provided in the search warrant affidavit. Although Officer Milewski was on the scene, he did not have first-hand knowledge of many of the events which took place prior to the protective sweep in the motel room.

The finding of probable may not be reversed unless it is clearly erroneous. *United States v. Holtzclaw*, 2007 WL 2049257 (D. Nev.) (citation omitted). The Supreme Court has stated that the issuance of a search warrant by a detached neutral judge is entitled to great deference by a reviewing court. *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (citations omitted). The Supreme Court in *Gates* explained further:

1
2
3
4

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for concluding" that probable cause existed.

5
6
7
8

*Id.* at 238-39. It has long been the law, as noted in *Gates*, that an affidavit in support of an application for a search warrant may be based on hearsay information and need not reflect the direct personal observations of the affiant. *United States v. Gladney*, 2009 WL 175157 (C.D. Cal.) (citation omitted).

9
10
11
12
13
14
15
16
17
18
19
20

In reviewing the application and affidavit in support of the requested telephonic warrant in this case, the Court cannot conclude that the issuing judge committed "clear error" by considering the hearsay information provided by Officer Milewski. The information reported was witnessed by another police officer participating in the ongoing investigation. Defendants have offered nothing to suggest that eyewitness reports from officers participating in an investigation of potential criminal activity are inherently unreliable in determining whether there is probable cause to issue a warrant. Certainly an issuing judge may rely on hearsay information from a police officer in making the probable cause determination. Further, Officer Ocampo-Gomez testified during the evidentiary hearing in this matter and was subject to cross-examination. As more fully explained hereafter, nothing during Officer Ocampo-Gomez' testimony on direct or cross-examination leads the undersigned to conclude that the issuing judge did not have a "substantial basis for concluding" that probable cause existed.

21

**B. Claim of Deliberate Falsehood**

22
23
24
25
26
27
28

The crux of Defendants' claim appears to be that the affidavit contains a deliberate falsehood. Generally, a defendant must make specific allegations of falsity or deliberate recklessness accompanied by an offer of proof to justify a *Franks* hearing. *Craighead*, 539 F.3d at 1080. Here, Defendants do not challenge any one specific fact in the affidavit. Rather, Defendants argue that none of the information provided in the affidavit surrounding the Officer Ocampo-Gomez' interaction or activity at the motel room door or inside the motel room can be true. Specifically, Defendants' argue that through the partially opened motel room door (1) it was impossible for Officer Ocampo to have

1   seen Defendant Salisbury, (2) that the officer could not have seen that a black box was taken from the

2   counter by Salisbury, (3) that the officer could not have seen the packaging balloons, and (4) and that

3   he could not have seen Salisbury run into the bathroom.

4        During his testimony at the *Franks* hearing, Officer Ocampo-Gomez provided testimony that

5   was entirely consistent with the facts as set forth in the affidavit.  After arresting the individual that he

6   had witnessed exit the motel room for possession of drugs, Officer Ocampo-Gomez approached the

7   motel room.  Without provocation or command, a woman, Alisha Berg, opened the motel room door.

8   Officer Ocampo-Gomez stood in front of the doorway, but he did not enter the room.  He testified

9   that he could see into the room, and saw Defendant Salisbury tying off a colored balloon, and then

10  saw him grab the black box and quickly move into the bathroom.  It was only after Salisbury ran

11  toward the bathroom that Officer Ocampo-Gomez entered the motel room.

12       Defendants theorize that the door was never opened wide enough for Officer Ocampo-Gomez

13  to see into the room, and that he simply pushed his way into the room and discovered evidence of

14  illegal activity.  To support this theory, Defendants cross-examined the officers involved and

15  presented testimony from Alisha Berg, the woman Officer Ocampo-Gomez met at the door.  Nothing

16  in Ms. Berg's testimony supports the theory that the affidavit included factually untrue or deliberately

17  misleading information.  To the contrary, Ms. Berg confirmed that she did open the door, and that she

18  did not open the door based on a request or command from police.  She opened it to see whether her

19  boyfriend had arrived.  She testified that, in her opinion, she did not believe she opened the door wide

20  enough for the officer to see into the room, but her opinion on this point does not controvert Officer

21  Ocampo-Gomez' testimony.  Nothing during the *Franks* hearing leads this Court to believe that the

22  facts contained in the affidavit relating to what Officer Ocampo-Gomez saw while standing at the

23  door were untrue or misleading.[2]  The issuing judge did not commit clear error by considering

24  

25       [2]   The court notes one discrepancy in Officer Ocampo-Gomez' testimony.  Although Officer Ocampo-
26  Gomez' description of seeing Defendant Salisbury grabbing a black box and quickly moving into the bathroom is
    contained in the affidavit, the description of Salisbury holding a brightly colored balloon before he grabbed the
27  black box and went into the bathroom is not in the affidavit.  Although it is surprising that such incriminating
    evidence is not in the affidavit, the issue in this *Franks* hearing is whether the affidavit supporting the warrant
28  contained false information, or omitted important information which might undermine the judge's finding of

1   eyewitness information from an investigating officer in making the probable cause determination.

2   **C. Claim Regarding Deliberate Omissions**

3   Defendants also argue that there were "numerous" omissions from the affidavit that call into

4   question the validity of the warrant.  Specifically, Defendants contend that the following was omitted:

5   (1) that there was no prior evidence of drug trafficking from the motel room; (2) that there was no

6   prior surveillance of the residence; (3) that the officers did not know who resided in the motel room;

7   and (4) that the affidavit did not adequately explain how the police were able to get Alisha Berg to

8   open the door to the motel room.  Additionally, Defendants claims that there was no prior evidence

9   connecting the individual arrested in the parking lot outside the Defendants' motel room.

10   "Deliberate intent to deceive or reckless disregard for the truth can be inferred from the

11   omission of materials facts that would have negated probable cause." *United States v. May* , 2009

12   WL 1542557 *9 (D. Nev.) (citations omitted).  Nevertheless, the "omission rule" does not require an

13   affiant to provide information about every possible theory that would controvert the good faith

14   assertion of probable cause. *Craighead*, 539 F.3d at 1081.  Importantly, as previously noted, probable

15   cause means a "fair probability" that contraband or evidence is located in a particular place.   Whether

16   there is a fair probability depends upon the totality of the circumstances, and is a "commonsense,

17   practical question." *Kelley*, 482 F.3d at 1050-51.  "Probable cause" is a fluid concept that takes it

18   substantive content from the particular context in which it is being applied. *Ornelas v. United States*,

19   517 U.S. 690, 696 (1996).

20   None of the claimed omissions, if included in the affidavit, would have negated the probable

21   cause determination.   Whether there was prior evidence of drug trafficking from the motel room,

22   prior surveillance of the motel room, or knowledge of who was in the motel room is immaterial to the

23   probable cause determination here.  Based on the totality of the circumstances, as presented in the

24   affidavit, there was a "substantial basis" for the probable cause determination.  The sworn affidavit

25

26   probable cause. *See Franks*, at 171-172.  The failure to include the fact that he saw Defendant holding the tied
off balloon is hardly exculpatory because it actually provides additional support for the probable cause

27   determination.  Since the information was not provided to Judge Zimmerman, it did not influence her decision as
to whether probable cause existed and its omission does not substantially undermine the determination of

28   probable cause for the warrant.

indicates that the officers saw an individual exit the motel room.  That individual dropped what appeared to be drugs in front of the police.  The individual was arrested.  The officers determined to investigate the motel room from which they saw the individual exit.  Without provocation, the door to the motel room was opened from the inside.  The investigating officer, while standing outside the door of the motel room, witnessed suspicious activity.   Based on his training and experience, the officer believed the activities were consistent with the packaging, sale and trafficking of drugs.  An issuing judge is entitled to rely on the training and experience of a law enforcement officer in making the probable cause determination. *United States v. Payton*, 573 F.3d 859, 862 (9th Cir. 2009), citing *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002).

**D. Claimed Constitutional Violations**

Defendants also appear to claim that the search warrant is invalid because the affidavit is based upon information obtained in violation of the Fourth Amendment.

Citing *United States v. Winsor*, 846 F.2d 1569 (9th Cir.), Defendants contend that Officer Ocampo-Gomez violated the Fourth Amendment when he looked into the motel room through the open door.  In *Winsor*, the violation occurred when the police gained visual entry through a door that was opened at their command.  *Winsor*, 846 F.2d at 1573.  *Winsor* draws a clear distinction between situations in which officers obtain visual entry when a door is opened pursuant to their command and when a door is opened, or an officer's knock is answered, voluntarily.  *Id*.; *cf. United States v. Hersch*, 464 F.2d 228, 230 (9th Cir. 1972) (officers standing on a porch and viewing the interior of a home through a window is not an unconstitutional search or seizure); *Davis v. United States*, 327 F.2d 301, 303 (9th Cir. 1964) (police knocking on door, asking to see someone, being allowed in and seeing drugs in plain view was not an unconstitutional search or seizure).  Plainly stated, "[w]hen the police knock on a door without demanding entrance, and an occupant opens the door, no search or seizure for Fourth Amendment purposes occurs." *United States v. Aguilera*, 25 Fed. Appx. 594 (9th Cir. 2001).  The testimony from this *Franks* hearing is clear that the door to the motel room was not opened in response to a command or request from police.  Defendants' own witness testified that she opened it without provocation to look for her boyfriend.  There was no search or seizure, for purposes of the Fourth Amendment, when Officer Ocampo-Gomez stood outside the motel room door that was

1  opened voluntarily and without provocation.

2      Defendants also suggest that Officer Ocampo-Gomez violated the Fourth Amendment when
3  he entered the room for purposes of "freezing" the room and conducting a protective sweep.  As a
4  general rule, a warrantless search carried out in a private residence is considered presumptively
5  unreasonable.  *Welsh v. Wisconsin*, 466 U.S. 740, 749 (U.S. 1984).  However, a warrantless search
6  may be conducted in exigent circumstances, which are defined as those that would cause a reasonable
7  person to believe that entry … was necessary to prevent physical harm to the officers or other
8  persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence
9  improperly frustrating legitimate law enforcement efforts.  *United States v. Furrow*, 229 F.3d 805,
10  812 (9th Cir. 2000).  The government bears a heavy burden of demonstrating that exceptional
11  circumstances justified departure from the warrant requirement.  *United States v. Howard*, 828 F.2d
12  552, 555 (9th Cir. 1987).  The government must show specific and articulable facts which, taken
13  together with rational inferences support the warrantless intrusion.  *Id*.  The exigencies must be
14  viewed from the totality of circumstances known to the officers at the time of the warrantless
15  intrusion.  *Id.*

16      Here, it is clear from the affidavit that the officers, while patrolling in a high narcotics
17  trafficking area, saw a person exit the motel room.  That person was arrested for possession drugs.
18  Having seen the individual exit the motel room, and knowing this was a high narcotics trafficking
19  areas, Officer Ocampo-Gomez walked toward the motel room.  Without provocation, the door was
20  opened.  The officer looked in the door, saw multi-colored uninflated  balloons on the island counter
21  which he believed, based upon his training and experience, were used to package and sell drugs.  He
22  saw Defendant Salisbury with one of those balloons in his hand, and noticed that when Salisbury saw
23  him standing at the door, in uniform, he looked surprised and immediately grabbed a black box and
24  quickly moved into the bathroom.  The affidavit states that Officer Ocampo-Gomez knew, based
25  upon his training and experience, that a common method of disposing of drugs is flushing them down
26  toilet.  It was only after Officer Ocampo-Gomez saw Salisbury move toward the bathroom that he
27  stepped in the room.  Under the totality of these circumstances, the Court finds that a reasonable
28  person would believe that entry was necessary to prevent the destruction of evidence.

1    Moreover, the protective sweep conducted by the officers after entering and "freezing" the

2    room did not amount to a constitutional violation.  Protective sweeps are legitimate considering the

3    precautionary nature of the search, the seriousness of the crime involved, and the need for law

4    enforcement to protect themselves by securing the scene and preventing surprise attacks by

5    co-conspirators.  *Maryland v. Buie,* 494 U.S. 325, at 333, 334 (1990).  Because officers were

6    lawfully permitted to enter the room and its bathroom based upon the exigency of potential

7    destruction of evidence, they could also seize narcotics and related paraphernalia under the "plain

8    view" doctrine if the item was in plain view, and its incriminating character was immediately

9    apparent.  *United States v. Stafford*, 416 F.3d 1068, 1076 (9th Cir. 2005). The sweep resulted in

10   finding evidence including a tied off balloon in the toilet and digital scale in the room.  Both officers

11   testified that this evidence was in plain view during the sweep.  Once lawfully in possession of those

12   items, it was appropriate for the officers to describe those items in the affidavit to support their

13   application for a search warrant.[3]

14                                          **<u>CONCLUSION</u>**

15          Ultimately, the Court concludes that the affidavit submitted in support of the telephonic

16   application for a search warrant did not contain false statements or omissions of information that

17   would have undermined a determination of probable cause, and that it presented a substantial basis

18   for concluding that probable cause existed.

19          Based on the foregoing and good cause appearing therefore,

20          **IT IS HEREBY ORDERED** that  Defendant Aaron Salisbury's Motion for Joinder (#25) is

21   **granted**.

22   //

23   //

24   //

25

26          [3]  The Court separately notes that even excising everything in the search warrant affidavit subsequent to

27   when Officer Ocampo-Gomez entered the motel room, that the issuing judge still would have had a "substantial
     basis for concluding" that probable cause existed.  Suppression should only result if, after excising false or

28   misleading statements from the affidavit, there is no probable cause for the warrant. *See Franks*, at 171-172.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**RECOMMENDATION**

**IT IS RECOMMENDED** that Defendants' Motion to Suppress (#24) be **denied**.

**NOTICE**

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.,* 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 3rd day of February, 2012.

_____
**C.W. Hoffman, Jr.,**
**United States Magistrate Judge**

13